## IN RE WILL OF JOHN R. HENDERSON.

(Filed 9 December, 1931.)

**Trial G b—Verdict in this case held conflicting and ambiguous, entitling appellant from judgment entered thereon to a new trial.**

Where on the trial of a caveat of a will the first issue submitted to the jury is whether the paper-writing and every part thereof was the last will and testament of the deceased, and the third issue submitted was whether the testator had sufficient mental capacity to execute the instrument, and the jury answers the first issue "Yes" and the third issue "No," the verdict is conflicting in its result, and is so uncertain and ambiguous that on appeal from judgment entered thereon a new trial will be granted.

CIVIL ACTION, before *MacRae, Special Judge,* at May Term, 1931, of RICHMOND.

There was evidence tending to show that on 30 March, 1927, John R. Henderson executed a paper-writing as follows: "This my last will and testament is as follows: My sister, Lula, shall have all my property

as real estate during her entire lifetime, and after that shall go as described in my will that you will find in my safe. Mae to have my personal property. This 30 March, 1927."

The alleged testator left a wife and a daughter, named Edith Henderson. He also left a sister, Mrs. Mae Dennis, and a half sister, Mrs. Lula Crowson. The deceased married in 1924, but lived with his half sister, Lula Crowson, from 1911, to June or July, 1927, when he went to live with his wife and daughter. There was evidence tending to show that the paper-writing was found among valuable papers of the deceased. The daughter, Edith Henderson, who was a minor, filed a caveat to the will alleging that the signature of J. R. Henderson, testator, was obtained by Mae Dennis and Lula Crowson by means of undue influence and duress, and further, that at the time of executing said paper-writing the deceased did not have sufficient mental capacity to make a will. The alleged testator died on 26 May, 1930. There was evidence tending to show that the testator had sufficient mental capacity at the time the paper-writing was dated, and there was evidence to the contrary.

The court submitted the following issues:

1. "Is the paper-writing propounded, and every part thereof, the last will and testament of John R. Henderson?"

2. "Was the execution of the said paper-writing procured by improper and undue influence on the part of Mrs. Lula Crowson and Mrs. Mae Dennis?"

3. "Did J. R. Henderson, at the time of the execution of the paper-writing purporting to be his last will and testament, to wit, on 30 March, 1927, have sufficient mental capacity to execute the same?"

The court instructed the jury to answer the second issue "No," and thereupon the first issue was answered "Yes," and third issue "No."

The propounders excepted to the issues submitted by the court and tendered the following issues:

1. "Did J. R. Henderson, at the time of the execution of the paper-writing purporting to be his last will and testament, to wit, on 30 March, 1927, have sufficient mental capacity to execute the same?"

2. "Is the paper-writing propounded, and every part thereof, the last will and testament of J. R. Henderson?"

The court refused to submit the issues tendered by the propounders. From judgment upon the verdict, the propounders appealed.

*J. C. Sedberry for propounders.*
*L. H. Gibbons, Z. V. Morgan and F. W. Bynum for caveators.*

BROGDEN, J. The jury found in response to the first issue that the paper-writing and every part thereof was the last will and testament of

John R. Henderson. Nevertheless, in response to the third issue, the jury found that the testator did not have sufficient mental capacity to make a will. The result is that the first issue finds the will to be valid, and the third issue finds it to be invalid. It was held for law in *Crabtree's case,* 200 N. C., 4, 156 S. E., 98, that when a will has been duly executed by the maker, in accordance with all the formalities of law, it is presumed to be a valid paper-writing and the maker presumed to have capacity to make such instrument, in the absence of fraud or undue influence. It is manifest, therefore, that the verdict is materially repugnant. Discussing a repugnant verdict in *Wood v. Jones,* 198 N. C., 356, 151 S. E., 732, *Clarkson, J.,* wrote: "A verdict should be certain and import a definite meaning free from ambiguity. The jury cannot find both for the plaintiff and the defendant on the same issue, as for instance, by a verdict giving the plaintiff damages and finding the defendant not guilty. And a verdict which is too uncertain or indefinite to be construed either as a general or special verdict may be rejected by the court as meaningless and of no effect." See, also, *S. v. Godwin,* 138 N. C., 582, 50 S. E., 277; *S. v. Snipes,* 185 N. C., 743, 117 S. E., 500.

The record discloses that the trial judge instructed the jury as follows: "The law requires the caveators to prove that he did not have sufficient mental capacity to make a will, and if they have satisfied you that he did not have sufficient mental capacity to make a will, then you must answer the first issue "No." In view of this instruction, the fact that the jury answered the first issue "Yes," would tend to show that the testator did have sufficient mental capacity to make a will. It is apparent that the verdict is uncertain and ambiguous so as to warrant a new trial. There are exceptions to certain evidence and to a portion of the charge, but as a new trial must be awarded, the court does not deem it necessary to discuss these exceptions.

New trial.